UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LUCIA R. PEREIDA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 2:20-cv-00107-RLM-SLC |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, *sued as Andrew M. Saul,* ) | |
| *Commissioner of Social Security,*` ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Lucia R. Pereida ("Pereida") appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF 1). The appeal was referred to the undersigned Magistrate Judge on June 1, 2020, by District Judge Robert L. Miller pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72(b), and this Court's General Order 2020-16 for the issuance of a Report and Recommendation. (ECF 9).

Having reviewed the record and the parties' arguments, I FIND that Pereida's arguments in support of a remand are persuasive, and accordingly, RECOMMEND that the Commissioner's decision be REVERSED and the case be REMANDED for further proceedings. This Report and Recommendation is based on the following facts and principles of law.

### I.  FACTUAL AND PROCEDURAL HISTORY

Pereida applied for benefits in August 2016, alleging disability as of August 5, 2016. (ECF 13 Administrative Record ("AR") 10, 228-235). Pereida's claim was denied initially and upon reconsideration. (AR 70-143). After a timely request (AR 164-65), a hearing was held on October 2, 2018, before administrative law judge ("ALJ") Edward Kristof, at which Pereida, represented by counsel, and a vocational expert testified (AR 35-69). On February 27, 2019, the ALJ rendered an unfavorable

decision to Pereida, concluding that she was not disabled because she could perform past relevant work, as well as a significant number of jobs in the economy despite the limitations caused by her impairments. (AR 7-20). Pereida's request for review was denied by the Appeals Council (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner, *see* 20 C.F.R. §§ 404.981, 416.1481.

Pereida filed a complaint with this Court in March 2020, seeking relief from the Commissioner's decision. (ECF 1). In her appeal, Pereida alleges that the ALJ: (1) erred in evaluating her physical residual functional capacity ("RFC"); (2) erred in evaluating medical opinion evidence; and (3) erred in evaluating her subjective symptoms. (ECF 15 at 10-22).

At the time of the ALJ's decision, Pereida was forty-nine years old (AR 70), and her work history included a customer service clerk. (AR 18). In her application, Pereida alleged disability due to fibromyalgia, ankylosing spondylitis, obesity, osteoarthritis, carpal tunnel syndrome, a heel spur, diverticulosis, benign colon polyp, right breast intraductal papilloma, ovarian cyst, sinusitis, intermittent iritis, and blepharitis. (AR 13).

## II.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner … , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the ALJ applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner … are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d

209, 212 (7th Cir. 2003) (citation omitted).  "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits."  *Books v Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III.  ANALYSIS

*A.  The Law*

Under the Act, a claimant is entitled to DIB or SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to … last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(D).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence:  (1) whether the claimant is currently unemployed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) whether she can perform her past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.[1]  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); *see also* 20 C.F.R. §§ 404.1520, 416.920.  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled.  *Id.*  The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner.  *Clifford*, 227 F.3d at 868.

---

[1] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations.  20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a).  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of.  20 C.F.R. §§ 404.1520(e), 416.920(e).

3

*B. The Commissioner's Final Decision*

On February 27, 2019, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 7-20). At step one of the five-step sequential analysis, the ALJ concluded that Pereida had not engaged in substantial gainful activity since August 5, 2016, the alleged onset date. (AR 13). At step two, the ALJ found that Pereida had the following severe impairments: fibromyalgia, ankylosing spondylitis, obesity, osteoarthritis, carpal tunnel syndrome, and a heel spur. (AR 13).

At step three, the ALJ concluded that Pereida did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 13). Before proceeding to step four, the ALJ determined that Pereida's symptom testimony was not entirely consistent with the medical evidence and other evidence of record with respect to her limitations. (AR 15). The ALJ assigned Pereida the following RFC:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) where the claimant can lift and carry, push and pull 10 pounds occasionally, and less than 10 pounds frequently, can sit for six hours of an eight hour day, and can stand and/or walk two hours of an eight hour day. The claimant must avoid climbing ladders, ropes, and scaffolds, but can occasionally climb ramps and stairs. The claimant can occasionally balance, stoop, kneel, crouch, but must avoid crawling. The claimant can perform frequent reaching, handling, and fingering bilaterally.

(AR 14). Based on the assigned RFC and the vocational expert's testimony, the ALJ found at step four that Pereida was able to perform her past relevant work as a customer service clerk. (AR 18). The ALJ also found that jobs exist in significant numbers in the national economy that Pereida can perform. (AR 18-19). Therefore, Pereida's applications for DIB and SSI were denied. (AR 20).

*C. Analysis*

1. <u>The ALJ Erred in the RFC Determination</u>

Pereida asserts that the ALJ erred in the RFC determination by creating an evidentiary deficit in choosing not to rely on any medical opinions; by failing to include limitations in reaching, handling, and fingering; and by finding that Pereida could sit long enough to perform full-time sedentary work.

4

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at*2 (July 2, 1996) (second emphasis omitted). That is, the "RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* at *1; *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

It is the province of the ALJ to craft the RFC and to resolve conflicts in evidence when doing so. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). "The administrative law judge is not required or indeed permitted to accept medical evidence if it is refuted by other evidence – *which need not itself be medical in nature* …." *Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009) (quoting *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir 1995)).

At the same time, "[w]hen an ALJ denies benefits, he must build an accurate and logical bridge from the evidence to [his] conclusion, and he may not 'play doctor' by using his own lay opinions to fill evidentiary gaps in the record." *Chase v. Astrue*, 458 F. App'x 553, 556-57 (7th Cir. 2012) (citations and internal quotation marks omitted). The ALJ must articulate which medical or treatment records "provide support for [his] opinion" and not leave the Court guessing "whether there is support for the RFC determination or whether the ALJ fabricated it out of whole cloth." *Betts v. Colvin*, No. 13-cv-6540, 2016 WL 1569414, at *3 (N.D. Ill. Apr. 19, 2016); *see Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("No doctor concluded that Larson's symptoms were just a response to situational stressors as opposed to evidence of depression. The ALJ's conclusion to the contrary thus finds no support in the record.").

    a.   Medical Opinion Evidentiary Deficit

Pereida first argues that the ALJ created an evidentiary deficit when he provided little weight to every medical opinion in the record. The ALJ provided little weight to the opinions of Dr. Oscar Ruiz, Pereida's treating physician; the state agency medical consultants; and the state agency psychological consultants. (AR 18). No other medical opinions are available in the record. In situations where the ALJ determines that none of the medical opinions in the record adequately account for a claimant's functional

5

limitations, he must overcome an "evidentiary deficit" that he may not fill with his own lay understanding of how the claimant's medically determinable impairments limit her ability to work full time. *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010). "ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018). The ALJ also found that Pereida's subjective allegations were not consistent with the medical evidence, and therefore her subjective allegations cannot fill the evidentiary deficit created by the ALJ. (AR 17-18).

Pereida's treating physician, Dr. Ruiz, opined that Pereida could not perform work full time. (AR 328, 439-41). The ALJ provided this opinion little weight. (AR 18). The state agency physicians opined that Pereida could perform light work with some further limitations. (AR. 73-74, 108-09, 128-29). The ALJ also provided those opinions little weight. (AR 18). Yet the ALJ found that Pereida could perform sedentary work with additional limitations, which is a decision not supported by any medical opinion. (AR 14). The ALJ seems to have constructed a middle ground and created his own physical RFC assessment. The ALJ did not provide evidence to explain how he came to the RFC limitations, and the creation of such middle ground without medical evidence to support his decision requires remand. *See Bailey v. Barnhart*, 473 F. Supp. 2d 822, 838-39 (N.D. Ill. June 12, 2006). The ALJ here impermissibly "played doctor," which is expressly prohibited by Seventh Circuit case law. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996.

     b. Handling and Reaching Limitations

Pereida also argues that the ALJ erred in finding that she could perform frequent reaching, handling, and fingering despite her severe carpal tunnel syndrome. (AR 14). Throughout the decision, the ALJ noted single instances of grip strength being 5/5 with normal fine finger manipulation and the ability to use her right hand to handle small items. (AR 15-16). Yet the ALJ ignores the evidence regarding her limitations in repetitive reaching, handling, or fingering (AR 441); her limitations in wrist and elbow movement (AR 327, 578-79, 589); her need to wear a wrist brace (AR 256, 324); and the noted pain, numbness, and tingling in her arms (AR 49-50, 324, 344, 378, 493, 578-79, 589). The ALJ must

consider all of the evidence in the record and provide a logical bridge from the evidence to his conclusion. *Chase*, 458 F. App'x at 556-57. Yet here, he failed to discuss evidence that Pereida suffered from pain and limited range of motion in her upper extremities. Without such a discussion, the Court cannot determine how the ALJ came to the conclusion that Pereida could perform frequent reaching, fingering, and handling despite her pain, need for a wrist brace, and limitations in wrist and elbow movement.

The Commissioner argues that there was other evidence that supported the ALJ's ultimate decision that Pereida did not require further reaching and handling limitations. (ECF 16 at 16). The Commissioner further argues that Pereida's treating physician did not even mention her carpal tunnel syndrome in his 2018 opinion. However, the ALJ makes no mention of these proffered reasons in the decision, and "the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace." *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012). Without a discussion of this evidence in the ALJ's decision, the Court cannot determine that the ALJ properly considered the evidence in his decision.

    c. Ability to Perform Sedentary Work

Pereida also argues that the ALJ failed to support his decision that she could sit for six hours in a workday without the need for additional breaks as a result of her obesity or fatigue. She contends that the ALJ failed to explain why she could lift ten pounds for more than two hours during the workday and could frequently lift or carry less weight. The ALJ's errors in his decision with regards to finding Pereida could perform sedentary work are discussed at length above. The ALJ erred in failing to provide any support for his reasoning behind finding Pereida could perform sedentary work. The ALJ did not rely on any medical opinion or provide any explanation of medical evidence to support his finding that Pereida could sit for six hours a day and frequently lift and carry less than ten pounds. The ALJ lists Pereida's medical history, but he provides no analysis or explanation as to how that evidence supports his decision that she could perform sedentary work.

The ALJ mentions once that Pereida was found to be capable of performing sedentary work at a functional capacity evaluation. (AR 17-18). The ALJ also notes that the functional capacity evaluation

showed she was not putting forth full effort during testing. (AR 17-18). While the examiner did note a lack of full effort during testing, he also noted that it "by no means impl[ies] intent," and that it is simply possible she may be capable of doing more "at times." (AR 419). Moreover, Pereida was unable to complete the testing due to severe pain, and she was "observed crying and had verbally reported . . . pain." (AR 420). Additionally, while the ALJ asserts that this testing found that Pereida could adequately perform sedentary work, the testing indicated only that she "has sedentary capacity … for all material handling tasks." (AR 421). The testing did not indicate she was capable of sitting for six hours a day, and the evaluation specifically stated that many functional areas were not assessed as Pereida could not complete the testing due to pain. (AR 421).

The ALJ provided no other analysis of Pereida's ability to perform sedentary work. A list of Pereida's medical evidence and subjective allegations does not qualify as proper analysis of her RFC and functional limitations. The omission of analysis as to how the ALJ arrived at his decision "in itself is sufficient to warrant reversal of the ALJ's decision." *Briscoe v. Barnhart*, 425 F.3d 345, 353 (7th Cir. 2005) (citing SSR 96-8p, 1996 WL 374184, at *7).

2. The ALJ Erred in Evaluating Opinion Evidence

Second, Pereida argues that the ALJ erred in weighing the two opinions from her treating physician, Dr. Ruiz.

The Seventh Circuit Court of Appeals has explained that "more weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870 (citations omitted); *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, this principle is not absolute, as "[a] treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford*, 227 F.3d at

8

870 (citation omitted); *see Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002); 20 C.F.R. §§ 404, 1527(c)(2), 416.927(c)(2).[2]

In the event the treating physician's opinion is not well supported or is inconsistent with other substantial evidence, the Commissioner applies the following factors to determine the proper weight to give the opinion: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) how much supporting evidence is provided; (4) the consistency between the opinion and the record as a whole; (5) whether the treating physician is a specialist; and (6) any other factors brought to the attention of the Commissioner. *See Books*, 91 F.3d at 979; 20 C.F.R. §§ 404.1527(c), 416.927(c). The Commissioner must always give good reasons for the weight ultimately applied to the treating source's opinion. *Clifford*, 227 F.3d at 870; 20 C.F.R. §§ 404.1527(c)(2), 415.927(c)(2).

Pereida asserts that the ALJ failed to properly weigh the February 2017 and May 2018 opinions as required under the regulations. In February 2017, Dr. Ruiz provided a letter which listed her diagnoses and provided limited opinions of Pereida's level of functioning. Dr. Ruiz noted that Pereida has chronic joint pains, body aches, and pain that makes it difficult to get out of bed. (AR 328). Dr. Ruiz further stated that Pereida's pain and impairments have been present for years and "seem[] to be worsening." (*Id.*). Dr. Ruiz then opined that Pereida cannot work due to her chronic pain and conditions. (*Id.*). The ALJ provided this opinion little weight, finding that Dr. Ruiz's opinions were "not generally consistent with the longitudinal treatment history of the claimant by Dr. Ruiz or other sources, or the findings of the functional capacity evaluation." (AR 18).

Dr. Ruiz also provided a physical RFC assessment in May 2018. (AR 439). Dr. Ruiz opined that Pereida's pain would be severe enough to interfere with her attention and concentration frequently. (*Id.*). Dr. Ruiz further opined that Pereida could handle moderate stress, but that she could only walk two city blocks without rest or severe pain. (AR 439-40). Dr. Ruiz then relied on the functional capacity

---

[2] 20 C.F.R. §§ 404.1527 and 416.927 do not apply to claims filed after March 27, 2017. Since Pereida's claim was filed prior to March 27, 2017, these regulations govern her claim.

9

evaluation from May 2018 to relay Pereida's functional limitations. (AR 441). Finally, Dr. Ruiz opined that Pereida would likely be absent more than four days a month. (*Id.*). The functional capacity evaluation is discussed in some detail above, and it opines that Pereida can sit for 30 minutes, can stand for 45 minutes, can perform lifting and carrying consistent with sedentary work requirements, and was unable to finish testing due to severe pain. (AR 420-21).

The ALJ provided little weight to the May 2018 opinion as well. (AR 18). The ALJ found that the opinion that Pereida's pain would interfere with her attention and concentration was in opposition to the opinion that she could handle moderate work stress. (AR 18). Moreover, the ALJ found that the opinion that Pereida would miss more than four days a month was "not generally consistent with the medical evidence as a whole." (AR 18).

The ALJ has failed to properly explain how Dr. Ruiz's opinions are inconsistent with the record. He fails to explain which portions of the record are inconsistent with the opinions. If the ALJ finds that a treating physician's opinion is not due controlling weight, he must adequately articulate his reasons for doing so. *Clifford*, 227 F.3d at 871. The ALJ did not provide any evidence or reason for why Dr. Ruiz's opinions are inconsistent with the medical record or the functional capacity evaluation. Moreover, the ALJ asserts that the functional capacity evaluation that Dr. Ruiz relies on in the 2018 opinion shows that Pereida is capable of sedentary work. However, nothing in the functional capacity evaluation shows that Pereida is capable of fulfilling every aspect of sedentary work. On the contrary, the functional capacity evaluation shows that Pereida is capable of lifting and carrying weights consistent with sedentary work, and that she is capable of fingering, handling, and reaching limitations consistent with sedentary work. (AR 420-21). The functional capacity evaluation offers no insight or opinions regarding Pereida's ability to sit or stand for times consistent with sedentary work. (AR 420-21). Pereida was unable to complete the testing required for the functional capacity evaluation, and therefore Pereida was not even fully tested on her ability to complete sedentary work. (AR 420-21).

The ALJ also failed to discuss other important regulatory factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c). The ALJ fails to acknowledge that Dr. Ruiz started treating Pereida in 2008, and that he saw

her every three to four months. By his 2018 opinion, Dr. Ruiz had been treating Pereida for ten years, seeing her multiple times a year. This long history of treatment was not discussed by the ALJ when he dismissed Dr. Ruiz's opinions. The ALJ erred in discussing Dr. Ruiz's opinions, and this error requires remand.

### 3. The ALJ Erred in Evaluating Pereida's Subjective Symptoms

Finally, Pereida asserts that the ALJ erred in considering all of the factors in SSR 16-3p when evaluating her subjective symptoms.

"In determining whether an individual is disabled, [the ALJ is to] consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). An ALJ's consideration of a claimant's symptom testimony is entitled to special deference because the ALJ is in the best position to evaluate the credibility of a witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and he articulates his analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988) (citation omitted), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted), his determination will be upheld unless it is "patently wrong," *Powers,* 207 F.3d at 435. *See Ray v. Berryhill*, 915 F.3d 486, 490 (7th Cir. 2019) (stating that with respect to an adverse credibility determination, it is a "rare case in which the claimant can overcome the 'considerable deference' [the court] afford[s] such findings unless they are 'patently wrong'" (citation omitted)); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's consideration of a claimant's symptom testimony because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness").

The regulations require the ALJ to analyze a variety of factors in making a determination of a claimant's subjective symptoms. These factors include: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medications; any additional treatments an

11

individual receives for relief of symptoms; any non-treatment measures taken to relieve symptoms; any other factors concerning an individual's functional limitations and restrictions due to symptoms. SSR 16-3p, 2016 WL 5180304, at *7-8 (Oct. 25. 2017).

The ALJ found that Pereida's medically determinable impairments "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 15). The ALJ noted that Pereida testified to only taking Tylenol to manage her symptoms despite being prescribed other medications such as Humira, which she was reluctant to try due to feared side effects. (AR 17). The ALJ also found that she did not seek other forms of treatment with her rheumatologist. (AR 17). The ALJ additionally relied on Pereida's claim at a physical therapy evaluation that she was in very good health. (AR 18). The ALJ further noted that she was found to be putting forth low effort in the functional capacity evaluation. (AR 18). Finally, the ALJ relied on Pereida's ability to drive her daughter to school, and her ability to perform her activities of daily living "with some breaks and assistance from family members." (AR 18).

The ALJ improperly relied on Pereida's testimony that she currently was only taking Tylenol to manage her pain. The medical record clearly shows that Pereida has tried multiple forms of treatment, including Toradol injections, physical therapy, and multiple medications. (AR 324, 333, 376, 380-81, 390, 392, 494, 581, 587). Moreover, she has had difficulty tolerating the medications prescribed to her. (AR 581, 587). The ALJ has not explained how Pereida's testimony regarding taking Tylenol was due to it being effective as opposed to struggling with pain control and medication side effects. This is not to say that the ALJ should determine that Pereida's pain is not well controlled by the Tylenol. However, there is evidence in the medical record that Pereida's pain is not well controlled and that she has had negative side effects that make her wary of taking new medication. The ALJ even acknowledges that Pereida is not taking her Humira due to fear of side effects. (AR 17). The ALJ's failure to discuss this evidence amounts to improper cherry-picking of the record. The Commissioner attempts to argue that Pereida stated that Toradol improved her pain when she had flare ups. ( AR 474). However, the ALJ did

not discuss this information.  Moreover, the medical note does not indicate that Toradol was completely effective in limiting Pereida's pain.  Instead, it simply states that "Toradol seems to help the best" when Pereida was having increased pain during a flare up.  (AR 474).  This does not indicate Toradol alleviated her pain or allowed her to continue working despite her flare up.

The Commissioner again relies on the opinions of the state agency physicians, to whom the ALJ provided little weight, to support the ALJ's decision that Pereida's symptoms were not as limiting as she alleged.  This is improper justification, as the ALJ did not rely on the state agency physicians in analyzing Pereida's subjective allegations.  Finally, the ALJ relies on the functional capacity evaluation, which has been discussed at length above.  The ALJ made errors in his analysis of the functional capacity evaluation, and reliance on that flawed view of the evaluation is in error.  The ALJ made multiple errors in assessing Pereida's RFC, which requires remand.

## IV.  CONCLUSION

For the foregoing reasons, I RECOMMEND that the Commissioner's final decision be REVERSED, and the case be REMANDED to the Commissioner for further proceedings in accordance with this Report and Recommendation.  The Clerk is directed to send a copy of this Report and Recommendation to counsel for the parties.  NOTICE IS HEREBY GIVEN that within fourteen days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b).  FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.  *See generally Thomas v. Arn*, 474 U.S. 140 (1985); *Lerro v. Quaker Oats Co.*, 84 F.3d 239, 241-42 (7th Cir. 1996).

Entered this 14th day of January 2021.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge